UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MICHAEL MITCHELL,

    Plaintiff,

v.   Case No. 2:20-cv-236-NPM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## OPINION AND ORDER

Michael Mitchell seeks judicial review of a denial of his application for disability insurance benefits. The Commissioner of the Social Security Administration filed the transcript[1] of the proceedings, and the parties filed a Joint Memorandum (Doc. 22). As discussed in this opinion and order, the decision of the Commissioner is reversed and remanded.

**I.      Eligibility for Disability Benefits and the ALJ's Decision**

    **A.      Eligibility**

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death

---

[1] Cited as "Tr." followed by the appropriate page number.

or that have lasted or can be expected to last for a continuous period of not less than twelve months.² An impairment limits someone's exertional abilities like standing or reaching, nonexertional abilities like seeing or hearing, or aptitudes necessary to do most jobs such as using judgment or dealing with people.³ And when someone's functional limitations preclude a return to past work or doing any other work sufficiently available in the national economy (or the limitations meet or equal the criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.⁴

B.   Procedural history and factual background

Mitchell is fifty-seven years old, has at least a high school education, and has acquired work skills from past relevant work. (Tr. 29). On April 20, 2017, Mitchell applied for disability insurance benefits, claiming he was unable to work due to disabling conditions beginning July 16, 2013. (Tr. 105, 183-184). Mitchell's application was administratively denied initially on August 4, 2017, and upon reconsideration on September 28, 2017. (Tr. 105, 127).

At Mitchell's request, Administrative Law Judge Eric Anschuetz held a hearing on November 16, 2018. (Tr. 37-87). At the hearing, Mitchell amended his

---

² *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. §§ 404.1505, 416.905.

³ *See* 20 C.F.R. §§ 404.1594(b)(4), 416.994(b)(1)(iv).

⁴ *See* 20 C.F.R. §§ 404.1511, 416.911(a).

alleged onset date to February 8, 2014. (Tr. 85-86). On February 7, 2019, the ALJ issued a decision finding Mitchell not under a disability from July 16, 2013,[5] through the date of the decision. (Tr. 17-30).

Mitchell's timely request for review by the administration's Appeals Council was denied. (Tr. 1-5, 181-182). Mitchell then filed a Complaint (Doc. 1) on April 3, 2020, with this Court, and the case is ripe for judicial review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 21).

### C. The ALJ's decision

An ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. 404.1520(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial

---

[5] The ALJ used the original onset date of July 16, 2013, rather than the amended onset date of February 8, 2014. The Court's analysis remains applicable for either onset date.

3

manner." 20 C.F.R. § 404.900(b). Unlike judicial proceedings, SSA hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id*. Indeed, "at the hearing stage, the Commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id*. (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id*. (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is temporarily relieved of the burden of production during step five as to whether there are enough jobs the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See Washington*, 906 F.3d at 1359; 20 C.F.R. § 404.1512 (providing that the claimant must prove disability); *see also Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) ("The scheme of the Act places a very heavy initial burden on the claimant to establish existence of a disability by proving that he is unable to perform his previous work."); *Doughty v. Apfel*, 245 F.3d 1274, 1280

(11th Cir. 2001) ("[T]he overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant.").

In this matter, the ALJ determined Mitchell met the insured status requirements through December 31, 2019. (Tr. 19). At step one of the evaluation, the ALJ found Mitchell had not engaged in substantial gainful activity since July 16, 2013. At step two, the ALJ characterized Mitchell's severe impairments as: "asthma; hypertension; status post bilateral shoulder surgeries; cervical radiculopathy secondary to degenerative disc disease of the cervical spine with disc protrusion at C6-7; and disc bulge at L4-5 and L5-S1." (Tr. 19). At step three, the ALJ determined Mitchell did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 23).

As a predicate to step four, the ALJ arrived at the following RFC:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 404.1567(b). The claimant could lift/carry weights of 20 pounds occasionally and 10 pounds frequently; stand/walk for 6 hours in an 8-hour workday; and sit for 6 hours in an 8-hour workday. The claimant can occasionally climb ladders and scaffolds, but never climb ropes; frequently climb ramps and stairs; frequently balance, stoop, and kneel, but only occasionally crouch and craw[l]; and frequently reach overhead bilaterally. He should avoid concentrated exposure to environmental extremes of cold; as well as excessively loud noisy work environments, and concentrated exposure to dusts, odors, fumes, and gases. He should not work with machinery that causes constant strong vibrations. He should avoid workplace hazards such as unprotected heights and unshielded rotating machinery. He can perform frequent fingering and handling.

(Tr. 23-24). The ALJ found Mitchell had past relevant work as a tractor-trailer truck driver and real estate agent. (Tr. 28). The ALJ then found Mitchell capable of performing work as a real estate agent. (Tr. 28).

Alternatively, at step five, the ALJ determined Michell could perform other jobs that existed in significant numbers in the national economy. In support, the vocational expert identified three representative occupations an individual with Mitchell's age (50 on the amended onset date), education (at least high school), work history, and RFC could perform:

(1) Sales clerk, DOT 290-477.014, SVP 3, light exertional level;

(2) Sales person, DOT 279.357.054, SVP 3, light exertional level; and

(3) Real estate broker, DOT 250.357-018, SVP 5, light exertional level.

(Tr. 33).[6]

## II. Analysis

Mitchell's appeal presents the following issues:

(1) whether the ALJ erred in finding Mitchell's mental health impairments non-severe and in not including any limitations as to mental impairments in the RFC; and

---

[6] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work, in a purely physical sense, that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to how long it takes to learn the job, and it is divided into three categories: unskilled, semiskilled, and skilled—with the "SVP" (Specific Vocational Preparation) providing further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled, SVP 3 and 4 are semiskilled, and SVP 5 through 9 are skilled.

(2) whether the ALJ properly evaluated Mitchell's subjective complaints of pain.

(Doc. 22, pp. 10-28).

## A. Standard of review

The Court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the Court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the Court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. If supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence

"preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

> **B. Whether the ALJ erred in finding Mitchell's mental health impairments non-severe and in not including any limitations as to mental impairments in the RFC**

Mitchell argues the ALJ erred by not finding his depression and anxiety were severe impairments. (Doc. 22, p. 21). He also argues the ALJ's error is not harmless because the ALJ included no mental health limitations in the RFC assessment. (Doc. 22, p. 24). The ALJ characterized Mitchell's mental impairments of depression and anxiety as medically determinable, but found they did not cause more than a minimal limitation in his ability to perform basic mental work activities. (Tr. 20).

At step two, an ALJ considers the severity of a claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment or combination of impairments is not severe "if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities" 20 C.F.R. § 404.1522(a). In other words, a severe impairment is an impairment or a combination of impairments that *significantly* limits a claimant's ability to perform basic work activities. *See* SSR 85-28, 1985 WL 56856, *4 n.1; 20 C.F.R. §§ 404.1520(c), 404.1522(a).

The severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards

8

of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). The impairment must also last or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1509. The claimant bears the burden at step two of proving that he has a severe impairment or combination of impairments. *O'Bier v. Comm'r of Soc. Sec. Admin.*, 338 F. App'x 796, 798 (11th Cir. 2009).

This inquiry "acts as a filter in that the finding of any severe impairment ... is enough to satisfy the requirement of step two and allow the ALJ to proceed to step three." *Ball v. Comm'r of Soc. Sec. Admin.*, 714 F. App'x 991, 993 (11th Cir. 2018) (internal quotations omitted). "Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). "[B]eyond the second step, the ALJ must consider the entirety of the claimant's limitations, regardless of whether they are individually disabling." *Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 841-842 (11th Cir. 2014) (internal citations omitted).

With this standard in mind, even if the ALJ should have characterized Mitchell's depression and anxiety as severe mental impairments, any error is

9

harmless because the ALJ characterized other impairments—asthma, hypertension, status post bilateral shoulder surgeries, cervical radiculopathy secondary to degenerative disc disease of the cervical spine with disc protrusion at C6-7, and disc bulge at L4-5 and L5-S1—as severe. (Tr. 19). The ALJ then advanced to step three of the sequential evaluation. *See Ball*, 714 F. App'x at 993. Thus, any error of not finding additional limitations severe is harmless. With this resolved, the issue becomes whether the ALJ erred in failing to include relevant additional limitations from these mental impairments in assessing the RFC.

Before step four, the ALJ must assess a claimant's residual functional capacity, which is the most a claimant can still do despite his limitations. 20 C.F.R. § 404.1545(a). It consists of a claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [a claimant] can do in a work setting." 20 C.F.R. § 404.1545(a). An ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), (3). So, the ALJ must consider *all* of a claimant's medically determinable impairments, including those that are not "severe." 20 C.F.R. § 404.1545(a)(2); *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019). "The ALJ makes this determination by considering a claimant's physical, mental, and other abilities affected by the impairment. *Id.* (citing 20 C.F.R.

§ 404.1545(b)-(d)). If a claimant has a limited ability to carry out certain mental actions, such limitation may reduce a claimant's ability to do past work or other work. *Id.* "If an ALJ fails to address the degree of impairment caused by the combination of physical and mental medical problems, the decision that the claimant is not disabled cannot be upheld." *Id.* at 1269.

Instructive on this point is the Eleventh Circuit's recent decision in *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268-1270 (11th Cir. 2019). The court remanded the case to the Commissioner, in part, because, "[s]evere or not, the ALJ was required to consider Schink's mental impairments in the RFC assessment but evidently failed to do so." *Id.* at 1269. Although the ALJ stated he considered all symptoms when assessing Schink's RFC, the content of the decision shows otherwise. *Id.* Nearly the entire RFC assessment discussed Schink's physical impairments at length, but only mentioned that he had bipolar disorder with no real discussion of how this impairment affected the claimant's ability to work. *Id.* The ALJ's ultimate RFC findings did not include even a single reference to Schink's mental capabilities, but instead concerned Schink's physical capabilities exclusively. *Id.* Even assuming the ALJ considered Schink's mental impairments by implicitly finding they posed no significant limitations on his work-related mental impairments, the court found this would still not permit affirmance. *Id.* This is because an ALJ's "'failure ... to provide the reviewing court with sufficient

11

reasoning for determining that the proper legal analysis has been conducted mandates reversal' in its own right." *Id.* (citation omitted).

Here, the ALJ found depression and anxiety were medically determinable impairments that did not rise to the level of severe. (Tr. 20). In so finding, the ALJ considered the four broad areas of mental functioning, known as the "paragraph B" criteria. (Tr. 13-15); 20 C.F.R. § 404.1520a(c)(3). These four broad areas consist of: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentration, persistence, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3). In all four of these areas, the ALJ found Mitchell had mild limitations. (Tr. 21-22).

Here, as in *Schink*, the ALJ explained at step two that the "limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." (Tr. 23); *Schink*, 935 F.3d at 1269. And the ALJ acknowledged that the "mental residual functional capacity assessment used at steps 4 and 5 … ***requires a more detailed assessment***." (Tr. 23) (emphasis added); *Schink*, 935 F.3d at 1269.

In the RFC portion of the decision, the ALJ mentioned Mitchell's mental health impairments only when determining whether the state agency mental health review consultants' opinions were unpersuasive:

> As for the opinion evidence, I find the opinions of the state agency mental health review consultants in Exhibits 1A and 3A not persuasive. The DDS consultants have program knowledge; are licensed medical professionals in their fields; and have extensive experience evaluating and treating persons with mental impairments. However, none of the consultants had the opportunity to treat or examine the claimant, and the opinions were not based on the most recent evidence of record, which documents the claimant is not as limited as previously determined. The claimant was only treated with prescribed medications from his primary care provider and did not seek specialized mental health treatment until May 2017. Psychiatric treatment notes and mental status examination findings did evidence anxious and depressed mood, with realistic obsessive and worry about the claimant's ill son. However, the remainder of the mental status examination and psychiatric treatment notes reflect generally normal findings. (Exhibits 13F, 22F, 23F). Moreover, the review consultants did not have access to the claimant's hearing testimony, wherein he admitted that he maintained his real estate license since 2001, which required a written renewal examination every two years, and that he also used his license to sell a property and receive a commission payment in 2017. The evidence currently of record is more persuasive.

(Tr. 27). Otherwise, the ALJ merely included this conclusory statement:

> In sum, the medical record as a whole supports a conclusion that the claimant can perform physical requirements of work at the light exertional level, with the acknowledged limitations, consistent with the residual functional capacity finding, considering his severe impairments. I have carefully considered the non-severe impairments in assessing the claimant's residual functional capacity and I find no specific functional limitations beyond those outlined above.

(Tr. 28). The ALJ did not discuss whether Mitchell's mild limitations in all four areas of mental functioning also limited his RFC. Even in the most favorable interpretation of the ALJ's decision, that he implicitly considered Mitchell's mental conditions in assessing the RFC and found no limitations in his work-related mental capacities, the Court cannot affirm because "the ALJ's 'failure ... to provide the reviewing court with sufficient reasoning for determining that the proper legal

13

analysis has been conducted mandates reversal' in its own right." *Schink*, 935 F.3d at 1269 (quoting *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)).

Whether severe or not, the ALJ was required to explicitly consider Mitchell's mental impairments when assessing the RFC but failed to do so. In sum, the ALJ failed to expressly construct a logical bridge between his finding that Mitchell had mild impairments in all four areas of mental functioning and yet no limits whatsoever in the mental functions associated with work.

## C.     Remaining issue

Mitchell's remaining issue focuses on whether the ALJ properly evaluated his subjective complaints of pain. Because the Court finds that remand is warranted to reassess Mitchell's RFC, the Court need not address the other argument raised. *See Francis v. Saul*, No. 8:18-cv-2492-T-SPF, 2020 WL 1227589, *4 (M.D. Fla. Mar. 13, 2020) (citing *Demench v. Sec'y of Dep't of Health & Human Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (declining to address plaintiff's remaining arguments due to conclusions reached in remanding the case)).

## III.   Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds the ALJ's RFC determination is not supported by substantial evidence. It is **ORDERED** that the decision of the Commissioner is **REVERSED**

**and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner to reconsider Mitchell's RFC assessment and reevaluate Mitchell's subjective complaints of pain. The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and scheduled events, and close the case.

**ORDERED** in Fort Myers, Florida on September 22, 2021.

*/s/ Nicholas P. Mizell*
NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE